**Below is the Order of the Court.**



**Christopher M. Alston**
**U.S. Bankruptcy Judge**
**(Dated as of Entered on Docket date above)**

Christopher M. Alston
Bankruptcy Judge
United States Courthouse
700 Stewart Street, Suite 6301
Seattle, WA 98101
206-370-5330

## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re | Chapter 11 |
| UniEnergy Technologies LLC, | Case No. 21-11903 |
| | ORDER ON UNIENERGY TECHNOLOGIES, LLC'S MOTION TO DISMISS |
| Debtor. | |

This matter came before the Court on UniEnergy Technologies LLC's ("UET") Motion to Dismiss the Involuntary Petition (the "Motion") (ECF No. 50). Except as noted below, the Court considered the Motion, opposing and supporting briefs, supporting and opposing declarations and the attached exhibits, and the arguments of counsel at a hearing on February 18, 2022. The Court makes the following findings of fact and conclusions of law and, for the reasons set forth below, denies the Motion.

Order on Motion to Dismiss - 1

# I.    <u>FINDINGS OF FACT</u>

## A.    <u>A Foreign Company is Formed and Controlled by UET's Former Officers.</u>

UET is a Washington limited liability company that conducted business at leased premises in Mukilteo, Washington. ECF No. 29-1 at 2 and ECF No. 54 at 2. According to one of its former principals, UET invented a new way to build vanadium-flow batteries for stationary energy storage. ECF No. 118, ¶ 2. UET applied for and obtained several patents for the technology in the United States and other jurisdictions. ECF No. 118, ¶ 3. UET referred to its batteries as "ReFlex" and submitted an application for this trademark with the U.S. Patent and Trademark Office ("USPTO"). *Id*. The patents and the trademark are collectively referred to as the "Intellectual Property."

In late 2020 or early 2021, UET consulted with bankruptcy counsel. ECF No. 145-1 at 48. UET asserts that it ceased operations and surrendered the Mukilteo premises in April 2021. ECF No. 54 at 2. UET estimates that it owes money to about two dozen unsecured creditors. ECF No. 145-1 at 27.

Vanadis Power B.V. ("Vanadis") is a corporation organized under the laws of the Netherlands on April 30, 2020. ECF No. 38, ¶2. Vanadis asserts that it was created to serve as a re-seller and contract manufacturer for UET in Europe. *Id*. The following individuals had various roles with UET and now with Vanadis:

•    Zhenguo "Gary" Yang was employed at UET from March 2012 to April 2021, serving as Chief Executive Officer and President until June 2015, then Chief Executive Officer only until March 2018, then as Chief Technology Officer until April 29, 2021. ECF No. 51 at ¶¶ 5–6. He has been a managing director at Vanadis since it was formed. ECF No. 145-1 at 22 and 37.

•    Rick Winter executed an agreement for UET in April 2018 as CEO and President. ECF

Order on Motion to Dismiss - 2

No. 29-6 at 4. He also has been a managing director at Vanadis since it was formed. ECF No. 123-1 at 22 and 37.

• Roelof Platenkamp held various roles with UET that allow him to testify about UET's business and Intellectual Property. ECF No. 118 at ¶1. He is also a director and officer of Vanadis. *Id*.

**B. UET'S Secured Lender Allegedly Forecloses on Virtually All of UET's Assets.**

UET asserts that on April 3, 2018, Venture Lending & Leasing VIII, Inc. (which is referred to as Western Technology Investment or "WTI") agreed to extend a loan to it that was secured by all of UET's assets. Motion at 6. UET then claims it defaulted on the loan by not making timely payments on the debt. *Id*. As of November 19, 2020, UET allegedly owed WTI over $1,399,921, not including attorneys' fees, late fees, and other allegedly recoverable costs. *Id*. WTI supposedly sent a notice of default to UET in December 2020. ECF No. 40, ¶ 6. UET further asserts that on April 7, 2021, WTI delivered a notice of intent to sell its collateral through a private sale. *Id*.

To support these allegations, UET relies on the declaration of David Wanek, ECF No. 40, ¶¶ 3–12, who is the President of WTI. Noticeably absent from Mr. Wanek's declaration are (1) any statements that WTI acquired a security interest in all assets of UET, (2) any statements that WTI acquired a security interest in the Intellectual Property, and (3) copies of any loan documents reflecting the alleged security interests in any UET assets or any other documents he describes, such as a notice of default or a notice of intent to privately sell WTI's collateral.

WTI claims it commenced discussions with a company called Forever Energy, Inc., in March 2021 as a potential purchaser under the anticipated private sale. ECF No. 40, ¶ 17. According to WTI, Forever Energy never made an acceptable offer. *Id*. at ¶ 18. Mr. Wanek also

Order on Motion to Dismiss - 3

swore that WTI was reluctant to do business with Forever Energy because it was a brand-new company with no track record and uncertain and unknown financing. *Id*. at ¶32.

**C.**     **The Secured Lender Enters into a Sale Agreement with Vanadis.**

UET then asserts Vanadis and WTI entered into a Foreclosure Sale Agreement under which Vanadis acquired all of WTI's interests in certain property that allegedly secured the UET loan, and the transfer was effective on August 24, 2021.  Motion at 7.  While UET did not provide a copy of that document with the Motion, Vanadis submitted the Foreclosure Sale Agreement in connection with another motion.  *See* ECF No. 118, Ex. B.

According to the Foreclosure Sale Agreement, the total consideration to be paid in cash is $3,523,010.  However, only $273,010 was paid at closing.  ECF No. 40, ¶ 20.  The balance is to be paid as follows:

- $750,000 is due the earlier of a) two years after closing, b) Vanadis or Newco (defined below) has raised $20 million in investments, and c) Vanadis or Newco has generated $60 million in revenue;

- $1.5 million is due the earlier of a) three years after closing, b) Vanadis or Newco has raised $60 million in investments, and c) Vanadis or Newco has generated $100 million in revenue;

- $500,000 is due three years after closing; and

- $1 million is due four years after closing.

ECF No. 118, Ex. B-4.  WTI asserts that interest continues to accrue on UET's debt at a rate of 18 percent per annum, compounded monthly.  ECF No. 40, ¶ 21.  UET failed to submit with the Motion copies of any loan documents that show the terms or the alleged interest rate.

Several provisions in the Foreclosure Sale Agreement merit attention.  First, under the

Order on Motion to Dismiss - 4

"Consideration" section, $2,023,010 of the amount to be paid is labeled as the "Purchase Price" while $1,500,000 of the amount to be paid is labeled as a "Bonus." A careful reading of the section leads one to conclude that the so-called "Bonus" is not contingent on Vanadis meeting any benchmarks or any other event; rather, just like the "Purchase Price," Vanadis is obligated to pay the so-called "Bonus" over time. ECF No. 118, Ex. B. When asked at his deposition why part of the consideration is designated as a bonus, Mr. Wanek had no explanation:

> Q: So in addition to the $2 million and change purchase price, further down it looks like WT (sic) is also entitled to $1.5 million bonus; is that right?
> A: That's correct.
> Q: Why is that a bonus?
> A: I'm just rereading it.
> (Pause in the proceedings.)
> A: I think it's described as a bonus. It's just -- it's additional -- since we weren't taking any -- it was -- it was just what was negotiated. It's the way the deal was negotiated.

ECF No. 145-1 at 8.

Second, the Foreclosure Sale Agreement states Vanadis intends to consummate a transaction with TGOOD Holdings Ltd. or its affiliates and form a new entity ("Newco") to whom Vanadis shall transfer all of its rights and obligations under the Agreement. ECF No. 118, Ex. B at 4. Dr. Platenkamp recently confirmed this intention at his deposition, revealing that Vanadis intended to partner or merge with TGood Global by the end of February 2022 to form a new company—that will be incorporated in Switzerland—to use the Intellectual Property assets. ECF No. 145-1 at 36. This provision is curious considering Mr. Wanek's sworn statement that WTI did not want to do business with Forever Energy because it was a new company with unknown or uncertain financing. Indeed, Vanadis itself is a new company that was formed just seven months before WTI allegedly sent a notice of default to UET, and WTI was willing to allow Vanadis to transfer the payment obligations to a company that does not even exist and has

to raise tens of millions of dollars in investments.

Third, under the section entitled "Additional Agreements," Vanadis granted WTI the right to invest up to $5 million in Vanadis' anticipated initial offering of equity or convertible debt securities. ECF No. 118, Ex. B at 9. This investment right was additional consideration that WTI negotiated to be included in the Agreement. ECF No. 145-1 at 8.

In further support of the Motion, UET also submitted a declaration of Chris Villani. ECF No. 52. He identifies himself as the "authorized agent" of UET, but he neither states what UET authorized him to do nor establishes his role or connection with UET. Mr. Villani declares that *all* of UET's assets were sold by WTI to Vanadis. *Id.* at ¶ 7. Not only does he fail to explain how he knows about this transaction, but his statement is also wrong: the Foreclosure Sale Agreement expressly excludes certain assets.

UET filed another supporting declaration of Mr.Villani. After again only claiming to be an "authorized agent," he declares WTI and UET entered into loan documents and that attached to his declaration is a true and correct copy of a document entitled "Loan and Sale Agreement." ECF No. 135, ¶6. The actual title of the document attached is "Loan and Security Agreement" and is dated April 3, 2018. ECF No. 135, Ex. A. The Court notes there are only two parties to the Loan and Security Agreement offered by Mr. Villani: UET as Borrower and WTI as Lender. *Id.* Yet the first recital of the Foreclosure Sale Agreement states the Loan and Security Agreement dated April 3, 2018, is by and among WTI, UET, and a third entity: UniEnergy Corporation, a Delaware corporation that is the parent of UET. ECF No. 118 at Ex. B-1. The recital also references a supplement to the Loan Security Agreement that was not provided with Mr. Villani's declaration. These variances call into question the authenticity and accuracy of the documents offered in support of the Motion.

Order on Motion to Dismiss - 6

D.    **Several Creditors File an Involuntary Petition Against UET.**

On October 14, 2021, five parties from four different states alleging to be creditors of UET (the "Petitioning Creditors") filed an involuntary petition under chapter 11 of the Bankruptcy Code against UET.  ECF No. 1.  The Petitioning Creditors, along with Forever Energy (who also claims to be a creditor but did not join the petition) have styled themselves as the Ad Hoc Committee (the "Committee").  UET answered the involuntary petition, alleging it has more than 12 creditors, admitting the claims of two of the petitioning creditors, and denying the claims of the other three.  ECF No. 54 at 2–3.

E.    **No One Claims Property Remaining at the Formerly Leased Premises.**

Very early in the case, the owner of the Mukilteo premises that were leased to UET filed an emergency motion for relief from stay.  ECF No. 28.  Pre-petition, the landlord terminated the lease, by delivering a termination notice that demanded, among other things, UET remove any personal property on the premises.  ECF No. 29, Ex. C.  On August 30, 2021, WTI sent a letter to the landlord agreeing to remove any of its collateral by no later than September 10, 2021 and declaring it would release any interests in any remaining property after that date.  *Id.* at Ex. D. As of the petition date, there was a substantial amount of property remaining at the premises, and the landlord needed to have the property removed to prepare the premises for a new tenant.  *Id.* at ¶ 8.

Unsure whether UET still retained any interests in the remaining property, the landlord sought relief from the stay to take control of, remove, and store the property (at UET's expense) until the ownership issues are resolved.  ECF No. 28 at 5–6.  Notably, the landlord asserted that, based on communications with various counsel, neither UET, WTI, nor Vanadis were asserting any claim to the remaining property.  *Id.* at 4.  None of those parties filed a response to the

Order on Motion to Dismiss - 7

landlord's motion. At the hearing, counsel for those three parties were present but said nothing. Forever Energy stepped up and agreed to remove and store the remaining property pending a determination of ownership. The agreement was memorialized in a stipulation and order between Forever Energy and the landlord. ECF Nos. 75 and 77. Forever Energy subsequently filed a list of remaining property that would be removed, which included nearly 40 liters of electrolyte. ECF No. 115. Again, neither UET, WTI, nor Vanadis asserted any interest in these items. The Committee contends in its opposition to the Motion that these assets are being held for the benefit of the estate. ECF No. 144 at 15–16.

In reply to the Committee's opposition brief, and nearly a month after Forever Energy filed the list of remaining property, UET submitted a declaration from Dr. Platenkamp. He asserts that, notwithstanding its silence for months, Vanadis owns all the electrolyte and "is considering arrangements to remove" it. He warned, "[i]f Forever Energy or anyone else takes the electrolyte, it will be taking Vanadis's property." ECF No. 136, ¶ 6. The Court, however, only authorized Forever Energy to remove all assets, including the electrolyte, as Vanadis said nothing when the ownership issue first arose. The Court further notes Dr. Platenkamp does not discuss any of the other items on the list of remaining property, apparently content to allow Forever Energy to incur the costs of disposing of them.

## II.    CONCLUSIONS OF LAW

### A.    Jurisdiction and Venue.

This Court has jurisdiction pursuant to 28 U.S.C. § 1334(b). Venue lies in this Court by virtue of 28 U.S.C. § 1409. This proceeding is core within the meaning of 28 U.S.C. § 157(b)(2)(A).

Order on Motion to Dismiss - 8

**B.** **The Court Declines to Consider Certain Evidence Offered by UET.**

In support of its allegations that WTI foreclosed upon and sold to Vanadis virtually all of UET's assets, UET relies upon the declaration of David Wanek. While Mr. Wanek discusses and describes several agreements and notices, he does not attach any documents.

Mr. Wanek's statements regarding the alleged loan documents and foreclosure notices are not admissible under the "best evidence rule." That rule provides that the original of a writing, recording, or photograph is required to prove the contents thereof. Fed.R.Evid. 1002. Where the rule applies, the proponent must produce the original (or a duplicate, *see* Fed.R.Evid. 1003) or explain its absence. Fed.R.Evid. 1002, 1004. The rule's application turns on whether contents are sought to be proved. *United States v. Bennett*, 363 F.3d 947, 953 (9th Cir. 2004). The rule applies when a witness seeks to testify about the contents of a writing, recording or photograph without producing the physical item itself. *Bennett* at 953 (holding that testimony about GPS data being offered to show the defendant's whereabouts was barred by Evidence Rule 1002 since the GPS data itself was available to present).

Here, UET relies on the testimony of Mr. Wanek to prove the contents of multiple documents without any testimony that the documents are not available. If UET wants to show it conveyed a security interest in its property and that WTI conducted a valid foreclosure, UET must introduce copies of the documents through witnesses with personal knowledge of their authenticity.

Three days before oral argument on this Motion, UET filed the reply declaration of Chris Villani that states WTI and UET entered into loan documents and attaches two exhibits: a document entitled Loan and Security Agreement dated April 3, 2018, and UCC-1 financing

Order on Motion to Dismiss - 9

statement. ECF No. 13, ¶6 and Exs. A and B. The Court declines to consider this statement and these documents for several reasons.

First, Mr. Villani, who states only that he is "an authorized agent" of UET, fails to explain how he has personal knowledge a) WTI and UET entered into any agreements, b) the Loan and Security Agreement is a true and correct copy of a document executed by UET and WTI, and c) WTI filed any financing statements. Fed.R.Evid. 602 (a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter).

Second, this Court's local rules require that all evidence in support of the motion must be filed with the motion. Local R. Bankr. 9013-1(d)(1). The purpose of the rule is to provide due process and fairness to parties who have an interest in a motion and requires the exclusion of documents that were described in a motion but not timely filed and provided to interested parties.

## C.   **The Conduct of Various Companies and Individuals Warrant Further Scrutiny.**

The theme of the Motion is quite simple: "Nothing to see here, move along." First and foremost, the Court notes that three individuals (Platenkamp, Yang, and Winter) who ran UET now control a recently formed foreign company that claims to own UET's Intellectual Property and virtually all other assets. The Court shares the Committee's concern that this fact alone merits examination of events that lead to this result.

Second, UET, with the assistance of Vanadis and WTI, attempts to convince the Court that WTI properly foreclosed on virtually all UET's assets and then sold these assets to Vanadis. Yet UET did not submit one single document with its Motion to support its many allegations regarding the foreclosure and sale. Instead, it relied solely on the one-sided, self-serving testimony of Mr. Wanek who described portions of the documents that suited his purposes. The

Order on Motion to Dismiss - 10

decision by UET, WTI, and Vanadis to not submit documents that would prove their allegations leads to the inferences that 1) there are issues or concerns with WTI's foreclosure sale, and 2) there is information in the documents that the parties do not want to disclose.

Case in point: the Foreclosure Sale Agreement, which Vanadis provided in connection with another motion, contains provisions that could be evidence of collusion in the foreclosure sale. First, WTI and Vanadis structured the consideration to consist of a "Purchase Price" and a separately labeled "Bonus." But the "Bonus" is not contingent on any event or achievement and is in fact just additional "Purchase Price" due over time—and Mr. Wanek could not offer any justification for the distinction in the Agreement. Moreover, WTI intends to take the position that, notwithstanding its alleged foreclosure on and completed sale of all its collateral, the debt continues to accrue interest at 18 percent compounded monthly and will therefore collect most of the $3.5 million. The Agreement also allows the foreclosing party/seller (WTI) to acquire a $5 million early-round equity position in the buyer (Vanadis). The value of this additional consideration is obviously unknown—it could be zero, or it could be worth millions.

Finally, the Court is concerned by the post-petition conduct and statements of Vanadis and WTI. For example, when UET's former landlord filed a motion for permission to dispose of remaining assets, Vanadis sat silent. Several months later, after Forever Energy obtained Court permission to take control of these items and has incurred costs to negotiate and arrange for their safekeeping, Vanadis announces this it will be removing the assets—or at least the containers of electrolyte—and warns Forever Energy not to take its property. As for WTI, its president swore in a declaration that it did not want to enter into a private sale with a new company but sold its interests to a newly formed company that intends to transfer the payment obligations to a

Order on Motion to Dismiss - 11

company that has not even been formed.  These facts lead the Court to reject the notion that "there is nothing to see here."

**D.**     **UET Fails to Show that Creditors Are Better Served By Dismissal .**

Section 305(a)(1) of the Bankruptcy Code[1] permits a court to abstain from a bankruptcy case and dismiss it if "the interests of creditors and the debtor would be better served by such dismissal or suspension."  Abstention is an "extraordinary remedy" and is only appropriate when "the court finds that both 'creditors and the debtor' would be 'better served' by a dismissal."  *In re Eastman*, 188 B.R. 621, 624 (B.A.P. 9th Cir. 1995); *In re Monitor Single Lift I, Ltd*., 381 B.R. 455, 462 (Bankr. S.D.N.Y. 2008) ("granting an abstention motion . . . requires more than a simple balancing of harm to the debtor and creditors; rather, the interests of both the debtor and its creditors must be served by granting the requested relief."); *see also In re Century/ML Cable Venture*, 294 B.R. 9, 37 (Bankr. S.D.N.Y. 2003).  The moving party bears the burden to demonstrate that dismissal benefits the debtor and its creditors.  *In re Acis Capital Management, L.P.*, 584 B.R. 115, 145 (Bankr. N.D. Tex. 2018).

When considering whether abstention is in the best interest of both the debtor and its creditors, courts have considered the following seven factors:

(1) the economy and efficiency of administration;

(2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court;

(3) whether federal proceedings are necessary to reach a just and equitable solution;

(4) whether there is an alternative means of achieving an equitable distribution of assets;

(5) whether the debtor and the creditors are able to work out a less expensive out-of-court

---

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

Order on Motion to Dismiss - 12

arrangement which better serves all interests in the case;

(6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and

(7) the purpose for which bankruptcy jurisdiction has been sought.

*In re Marciano*, 459 B.R. 27, 46–47 (B.A.P. 9th Cir. 2011), *aff'd*, 708 F.3d 1123 (9th Cir. 2013). There is no primary factor in determining whether to abstain under Section 305(a); it is a "totality of the circumstances" analysis. *Id.* at 48–49.

UET contends its sole asset is a fraudulent transfer claim that creditors may bring under applicable state law. Therefore, according to UET, the members of the Committee have adequate state court remedies at their disposal that render this bankruptcy proceeding unnecessary. ECF No. 3. UET ignores, however, other potential recoveries for creditors that Committee members could not pursue on their own in state court. For reasons stated below, it best for all parties—creditors, UET, its former officers and directors, WTI and Vanadis—that these recoveries be investigated and litigated in this Court to prevent many potential proceedings with disparate results.

1. There May be Substantial Surplus Proceeds Due to UET.

The Foreclosure Sale Agreement states the California Uniform Commercial Code (the "UCC") governed WTI's alleged security interests in UET's assets. The UCC provides that after default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral. Cal. Com. Code § 9610(a). Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable. Cal. Com. Code § 9610(b). If commercially reasonable, a secured party may dispose of collateral by public or private proceedings, by one or more contracts, as a unit or in parcels, and at any time and

Order on Motion to Dismiss - 13

place and on any terms.  *Id.*  A secured party shall account to and pay a debtor for any surplus, and except as otherwise provided in subdivision (b) of Section 9626, the obligor is liable for any deficiency.  Cal. Com. Code § 9608(4).

WTI purportedly transferred virtually all of UET's property via a private UCC foreclosure sale for a sales price that exceeds the outstanding debt.  WTI contends, however, UET's obligation is not satisfied and continues to grow with interest.  UET adopts WTI's position and makes clear that it does not believe there will be sufficient excess proceeds to pursue.  ECF No. 134 at 6.[2]  Neither UET nor the Committee present any analysis of the UCC or relevant authorities on whether this position is correct, and the Court need not and does not decide the issue today.  The issue it must decide is whether the interests of creditors and UET are better served by maintaining this bankruptcy proceeding to determine if this potential asset may be recovered—and the answer is clearly yes.

If the Court denies the Motion and ultimately enters the order for relief, UET would be the debtor-in-possession.  11 U.S.C. §1101(1).  As the debtor-in-possession, UET would bear essentially the same fiduciary obligation to creditors and shareholders as would the trustee for a debtor out of possession.  *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355, 105 S. Ct. 1986, 1994, 85 L. Ed. 2d 372 (1985).  UET would be statutorily required to examine

---

[2] UET argues that WTI is entitled to interest because in a bankruptcy proceeding WTI would be an over-secured creditor and the remaining $3.25 million due from Vanadis constitute proceeds of WTI's collateral that secures its $2 million debt.  ECF No. 134 at 6.  The Courts sees at least two problems with this position: 1) WTI transferred all of its interests in any UET property, including any proceeds, to Vanadis, so WTI no longer has any collateral securing any claim it may have against UET; and 2) WTI would have no lien on any surplus proceeds that may be due UET because no surplus proceeds could be due UET until WTI is paid in full.  The questions to be answered another day include whether a) the alleged remaining balance of the WTI loan can accrue interest at 18 percent or any other rate, and b) it would be commercially unreasonable for WTI to retain the additional consideration of the early investment right in Newco without providing any credit against the alleged loan balance, *see* Cal. Com. Code § 9615(c).

Order on Motion to Dismiss - 14

proofs of claims and object to the allowance of any claim that is improper. 11 U.S.C. §§704(a)(5), 1106(a)(1) and 1107(a).

If a creditor is dissatisfied with lack of action on the part of the debtor-in-possession, the creditor may move to replace the debtor-in-possession with a Chapter 11 trustee, convert the Chapter 11 case to one under Chapter 7, move to dismiss the Chapter 11 case, or petition the court to compel the debtor-in-possession to act or to gain court permission to institute the action itself. *In re Curry & Sorensen, Inc.*, 57 B.R. 824, 828 (B.A.P. 9th Cir. 1986); *see also Biltmore Assocs., LLC v. Twin City Fire Ins. Co.*, 572 F.3d 663, 674, n. 41 (9th Cir. 2009) (if debtor in possession refuses to bring an action, creditor "may appear and be heard" under 11 U.S.C. § 1109(b), and the court must allow the creditors' committee to sue independent of the debtor in possession if the failure to bring suit does not adequately protect the creditor's interests or the chose in action is of inconsequential value to the estate.).

In short, in a bankruptcy proceeding UET's creditors would have the right to ask the Court for relief if UET does not object to WTI's position regarding interest and does not pursue potential surplus proceeds. In contrast, outside of bankruptcy UET has no duty to the creditors to even consider pursuing the potential surplus payment, and the creditors have no standing to demand that UET do so. Given UET's position espoused in this Motion, without a bankruptcy there is virtually zero prospect that UET will assert claims to any possible surplus proceeds for distribution to its creditors.

In a footnote, UET suggests there are options for creditors to pursue potential surplus proceeds in state court. UET states that it could assign any right to the surplus to the Committee (or its designee) to administer for the benefit of creditors or that it could formally dissolve via the procedure outlined under Washington law and distribute any surplus proceeds it receives from

Order on Motion to Dismiss - 15

WTI. ECF No. 134 at 8, n. 6. Both procedures require UET to voluntarily act to either enter into an assignment or dissolve. Given UET's fierce opposition to the action of the Committee and the lack of any evidence that UET is willing to voluntarily do anything to pursue surplus proceeds, the Court has little confidence that either option would be available for creditors.

UET correctly notes that it could be years before any surplus proceeds might be available for unsecured creditors. The benefit of a bankruptcy proceeding is that the Court can close a case but retain jurisdiction over any future income stream, then reopen the case and distribute pro rata any proceeds. UET does not identify any similar mechanism that might be available to creditors outside of bankruptcy.

      2.    <u>UET Has Several Potential Causes of Action</u>.

As UET acknowledges, a court could determine WTI's transfer of its interests in UET's assets to Vanadis was a fraudulent transfer. *See, e.g., Stillwater Liquidating LLC v. Partner Reinsurance Co*., 151 A.D.3d 585, 586, 59 N.Y.S.3d 8, 9 (2017), aff'd, 151 A.D.3d 585, 586, 59 N.Y.S.3d 8, 9 (2017) ("The allegations that Stillwater Funding transferred its interests in the collateral, allegedly worth over $200 million, to defendants to satisfy a debt worth less than $40 million, thereby leaving Stillwater Funding unable to pay other creditors, states a cause of action for fraudulent conveyance."). To be clear, pursuit of claims to avoid the transfer would be in the alternative to pursuing any surplus proceeds, since Vanadis would not continue making any payments if it must return the assets.

UET accurately notes that creditors have standing to pursue an action in state court under the Washington Uniform Voidable Transactions Act, RCW 19.40, to avoid the transfer to Vanadis. But a bankruptcy proceeding offers the chance to avoid the transfer under both state law and the Bankruptcy Code, which has its own provisions for avoiding fraudulent transfers and

Order on Motion to Dismiss - 16

obligations. 11 U.S.C. §548. Although the state and federal statutes are "similar in form and substance" (*In re United Energy Corp.*, 944 F.2d 589, 594 (9th Cir.1991)), they are not identical. *In re Cohen*, 199 B.R. 709, 712 (9th Cir. BAP 1996); *In re Int'l Mfg. Grp., Inc.*, 538 B.R. 22, 26 (Bankr. E.D. Cal. 2015).

UET also has potential causes of action against its former officers and directors for breach of their duties to UET that could be pursued in bankruptcy. *See Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1002–03 (9th Cir. 2006) (trustee stands in the shoes of the bankrupt corporation and has standing to bring any suit that the bankrupt corporation could have instituted had it not petitioned for bankruptcy and may bring claims for pre-petition breach of duties owed to the corporation). After a cursory review of Washington authorities, it is not clear to this Court that creditors have standing to pursue claims against the officers and directors of a corporation for breach of fiduciary duties. *West One Automotive Group, Inc. v. Fearing*, 2007 WL 30885, at *3 (E.D. Wash. 2007) ("The general rule in Washington is that the corporate form limits the personal liability of its officers, directors, and shareholders."). Such claims would be against the individuals and would not necessarily require the unwinding of the transfer to Vanadis, so the causes of action could be in addition to potential claims to surplus proceedings.

UET may also have claims against WTI. If it is established that a secured party is not proceeding in accordance with the statutory requirements to conduct a UCC foreclosure, a person who was a debtor, was an obligor, or held a security interest in or other lien on the collateral may recover damages from a secured party in the amount of any loss caused by a failure to comply with the procedures for disposing of a secured party's collateral. Cal. Com. Code § 9625(a)–(e). The statute appears to preclude creditors of the debtor from seeking this relief. *Mussetter v. Lyke*, 10 F. Supp. 2d 944, 963 (N.D. Ill. 1998), *aff'd*, 202 F.3d 274 (7th Cir. 1999) (unsecured

Order on Motion to Dismiss - 17

creditors not entitled assert damages claim against secured creditor for failing to liquidate collateral in a commercially reasonable manner under California UCC).

In short, UET has missed or ignored several causes of action it may have that the Petitioning Creditors could not bring in state court. Given its arguments in the Motion and elsewhere in this case, UET makes clear that it is not willing or able to go after surplus proceeds or bring any causes of action outside of bankruptcy. With a bankruptcy proceeding, creditors can demand that UET take action to pursue these potential assets or ask that the Court turn the matters over to a trustee or an unsecured creditors committee.[3]

3.    The *Marciano* Factors Heavily Weigh Against Dismissal.

Applying the factors identified in *Marciano*, *supra*, the Court concludes that, looking at the totality of the circumstances, the best interests of creditors and UET are served by maintaining this bankruptcy proceeding.

      a)    It will be far more economical and efficient to administer UET's assets in bankruptcy. As one bankruptcy court noted, economy and efficiency are served where the alleged debtor resides in the district of the pending bankruptcy proceeding, the creditors themselves have picked the forum, creditors need not go around the country or the world to obtain relief, and where assets can be distributed in a *pari passu* manner, without races to obtain judgments. *In re Paper I Partners, L.P.*, 283 B.R. 661, 679 (Bankr. S.D.N.Y. 2002).

      Notably, UET was not a thriving business but instead was defunct and taking no action to pursue or liquidate assets for creditors. *See Acis Cap. Mgmt., L.P.*, 584 B.R. at 146 (finding "[t]his is not a situation where an ably-functioning, going-concern business is being

---

[3] The Committee asserts UET has other assets, including preferential transfer claims under section 547 of the Bankruptcy Code, intellectual property, and remaining property at the formerly-leased premises. Given its ruling on other potential assets and claims, the Court need not address the Committee's contentions.

Order on Motion to Dismiss - 18

foisted in disruptive fashion into a bankruptcy" and concluding the bankruptcy court is the more economic and efficient forum for liquidation and distribution of whatever assets remain to creditors in accordance with the distribution scheme set forth in the Bankruptcy Code). "When a debtor is not paying its debts as they come due, creditors may file an involuntary petition to preserve the debtor's assets rather than run the risk that the debtor will be financially dismembered by other creditors or its assets dissipated through the debtor's incompetence or dishonesty." *In re E.D. Wilkins Grain Co.*, 235 B.R. 647, 650 (Bankr. E.D. Cal. 1999).

If the Court were to dismiss this case, there could be myriad lawsuits seeking different relief. Some creditors may separately sue Vanadis to unwind the transfer. Some creditors may sue UET, obtain a judgment, and then acquire UET's litigation claims by executing on a judicial lien. The creditor(s) who take that approach may then, instead of trying to unwind the transfer, attempt to pursue WTI for surplus proceeds and/or damages under the UCC. As UET correctly noted, creditors cannot both unwind the transfer and demand payment of surplus proceeds. Yet that is a distinct possibility with dismissal of this case, as some creditors might bring an avoidance action in one court and other creditors might pursue the proceeds from and claims against WTI in another court. Other creditors may attempt to sue UET's former officers and directors for breach of their duties to an insolvent corporation. Each of the two dozen creditors could bring separate actions. There may not only be a race to the courthouse but a variety of suits in different courts, meaning that UET, WTI, and Vanadis might be subject to inconsistent results. Maintaining this bankruptcy proceeding ensures mutually exclusive remedies are not pursued against these parties, prevents piecemeal litigation, and provides a forum to collect any proceeds and distribute them fairly to creditors.

b)      The next *Marciano* factor addresses whether there is either another forum available to protect the interests of both parties or a proceeding already pending in state court.  In *Marciano*, the Ninth Circuit Bankruptcy Appellate Panel held that the third factor (whether federal proceedings are necessary to reach a just and equitable solution) and fourth factor (whether there is an alternative means of achieving an equitable distribution of assets) are sufficiently related to this second factor such that all three can be analyzed together.  *Marciano*, 459 B.R. at 49.

Importantly, there is no pending proceeding in state court.  This is not a situation where one party to an on-going lawsuit files itself or the other party into bankruptcy to stop the trial, avoid discovery, or change the forum after adverse rulings.  Moreover, UET has not identified another forum where all the above-described assets can be preserved, pursued, liquidated, and distributed equally to creditors while protecting UET, WTI, and Vanadis from multiple lawsuits and binding all creditors and parties that reside all over the country and the world.[4]

c)      The fifth *Marciano* factor addresses whether the debtor and the creditors can work out a less expensive out-of-court arrangement which better serves all interests in the case. UET has not provided any evidence that it has attempted to work something out with the Petitioning Creditors or that a consensual resolution is possible.

d)      As to the sixth *Marciano* factor, no other insolvency proceeding had even commenced, much less proceeded so far that it would be costly and time consuming to start anew in this Court.

---

[4] UET never mentions the possibility of commencing a general receivership under Washington law, RCW 7.60.005, et seq., as a mechanism to gather and liquidate assets and distribute proceeds to creditors.  The Court concludes that UET either recognized this remedy would not achieve the results of a bankruptcy proceeding or determined a receivership would be worse than maintaining this bankruptcy case.

Order on Motion to Dismiss - 20

e)  The seventh Marciano factor addresses the purpose for which bankruptcy jurisdiction has been sought.  The record shows the Petitioning Creditors filed this case after UET stopped paying its debts to obtain payment on their claims.  The Bankruptcy Code provides a mechanism for that result, that includes the (i) preservation of assets, (ii) resolution of creditor disputes, (iii) orderly ranking of creditor claims, (iv) oversight and investigation of potential avoidance actions and other causes of action, and (v) equitable distribution of assets.

While UET complains that "this Court could only have been selected as a litigation tactic," ECF No. 50 at 3, the *Marciano* panel observed, "[t]he filing of an involuntary bankruptcy petition is always a 'litigation tactic.'  Whether the filing is appropriate is a fact-dependent determination."  459 B.R. at 50.  For example, the bankruptcy court in *Marciano* expressed a primary concern that the issue of equality of distribution would not effectively be dealt with in any other forum.  459 B.R. at 50.

Like the creditors in *Marciano*, the Petitioning Creditors filed this case to obtain relief uniquely provided by the Bankruptcy Code.  Importantly, the case was properly filed in this district where UET is incorporated and operated, where the Debtor's assets are (and were) located and where the subject transactions occurred.  Contrary to UET's suggestion, there is no evidence that the petitioning creditors are engaged in forum shopping.

UET cites a raft of cases, but all of them are distinguishable for a variety of reasons.  *See In re Cincinnati Gear Co.*, 304 B.R. 784, 785 (S.D. Ohio 2003) (an assignment for the benefit of creditors and a state court fraudulent conveyance claim were already pending); *In re eBackpack, LLC*, 605 B.R. 126, 137 (Bankr. N.D. Tex. 2019) (state court receivership had previously been filed and the court determined there was no credible evidence of avoidance actions, or some unencumbered assets that might provide some benefit to creditors); *In re Jr. Food Mart of*

*Arkansas, Inc.*, 241 B.R. 423 at 428 (Bankr. E.D. Ark. 1999) (state court had already assumed jurisdiction over the estate's assets and court determined creditors had remedies already being addressed or existing in the state court); *In re International Zinc Coatings & Chemical Corp.*, 355 B.R. 76, 86 (Bankr. N.D. Ill. 2006) (chapter 7 trustee concluded there were no avoidance actions or other bankruptcy causes of action that could be pursued); *In re Seff Enterprises & Holdings, LLC*, 2010 WL 7326760 (Bankr. D. N.H. 2010) (court found chapter 7 trustee filed a report of no distribution and determined that there are no assets to be administered for the benefit of the bankruptcy estate); *In re Deacon Plastics Machine, Inc.*, 49 B.R. 982, 983 (Bankr. D. Mass. 1985) (court found debtor had no assets and showed no possibility of obtaining any in the future as creditors' arguments were nothing more than vague allegations); *In re Powers*, 35 B.R. 700, 703 (Bankr. W.D. Mo. 1984) (state court proceedings were pending, and court found there was nothing to administer for the benefit of creditors); *In re Gills Creek Parkway Assocs., L.P.*, 194 B.R. 59, 64 (Bankr. D.S.C. 1995) (creditor who filed involuntary petition solely to preserve possible preferential transfer was not eligible to file under section 303(b) and state court litigation with alleged debtor was pending); *In re Axl Indus., Inc.*, 127 B.R. 482, 484 (S.D. Fla. 1991), *aff'd in part, appeal dismissed in part sub nom. Remex Elecs. v. AXL Indus.*, 977 F.2d 598 (11th Cir. 1992) (court found matter was a two-party dispute and petitioner could obtain adequate relief in a non-bankruptcy forum).

### III. <u>CONCLUSION AND ORDER</u>

The Petitioning Creditors commenced this case for a proper bankruptcy purpose. They have established that there are potential assets and causes of action that could produce a recovery in bankruptcy that would be impractical or impossible for creditors on their own to reach outside of bankruptcy. To be clear, this Order should not be construed as a preliminary ruling that the

Order on Motion to Dismiss - 22

UCC foreclosure was defective, that WTI is not entitled to interest, that Vanadis is not the rightful owner of the assets described in the Foreclosure Sale Agreement, or that the former officers and directors of UET or any other persons or party has engaged in actionable or improper conduct.  Indeed, a bankruptcy proceeding may ultimately yield little for unsecured creditors of UET.  But the Petitioning Creditors have a right to seek an investigation and, if appropriate, pursuit of potential assets.  It appears to this Court that a bankruptcy court is an appropriate forum for all parties involved—and UET has not identified a superior alternative.  In sum, UET has failed to meet its burden to show the interests of UET and creditors would be better served by the dismissal of this case.  Accordingly, it is hereby

ORDERED that the Motion is DENIED.

/// END OF ORDER ///

Order on Motion to Dismiss - 23